581 S.E.2d 483

**Charles OLMSTEAD, Respondent,**

v.

**SHAKESPEARE, Petitioner.**

**Joanna Olmstead, Respondent,**

v.

**Shakespeare, Petitioner.**

**No. 25655.**

Supreme Court of South Carolina.

Heard March 6, 2003.
Decided May 19, 2003.

Gray T. Culbreath, of Collins & Lacy, P.C., of Columbia, for Petitioner.

Daniel E. Henderson, of Peters, Murdaugh, Parker, Eltzroth & Detrick, P.A., of Ridgeland, for Respondents.

Chief Justice TOAL:

Petitioner, Shakespeare, appeals from the Court of Appeals' decision finding that Respondent, Charles Olmstead ("Olmstead"), is not Shakespeare's statutory employee.

## FACTUAL/PROCEDURAL BACKGROUND

Olmstead owned and operated a truck and trailer that he leased to his employer, Hot Shot Express ("Hot Shot"). Hot Shot dispatched Olmstead to various places to pick up and deliver goods and materials. Hot Shot paid Olmstead after he completed delivery based on the number of miles he had driven.

Hot Shot sent Olmstead to pick up a load of fiberglass utility poles from Shakespeare's plant in Newberry, South Carolina for delivery to Shakespeare's customer in Montana. On May 19, 1997, Olmstead arrived at Shakespeare and assisted Shakespeare's staff in loading and strapping the large poles onto Olmstead's flatbed trailer. After all the poles were loaded, Shakespeare instructed Olmstead that some of the poles needed to be removed because they would not meet quality control and would not be accepted by the customer in Montana. Olmstead began loosening the straps around the poles, and was injured when several of the poles fell off the trailer unexpectedly. At least one of the poles struck Olmstead.

Olmstead filed his original complaint against Shakespeare in September 1997. Shakespeare filed a motion to dismiss, alleging Olmstead was its statutory employee, and, therefore, that workers' compensation provided Olmstead's exclusive remedy. S.C.Code Ann. § 42–1–400 (1976 & Supp.2002). At some point, Shakespeare withdrew its motion to dismiss, and Olmstead's complaint was dismissed pursuant to Rule 40(j), SCRCP.

Olmstead re-filed his complaint on May 14, 1999, along with Mrs. Olmstead's loss of consortium claim.[1] Shakespeare as-

---

1. The two-year period for filing a workers' compensation claim expired on May 19, 1999. S.C.Code Ann. § 42–15–40.

serted statutory employment as a defense in its answer, and filed a motion to dismiss on the same ground. After hearing arguments, the trial judge granted Shakespeare's motion to dismiss. The Court of Appeals reversed. *Olmstead v. Shakespeare*, 348 S.C. 436, 559 S.E.2d 370 (Ct.App.2002). This Court granted Shakespeare's petition for certiorari on the following issues:

I. Did the Court of Appeals err in finding that Olmstead was not the statutory employee of Shakespeare based on this Court's decision in *Abbott v. The Limited*, 338 S.C. 161, 526 S.E.2d 513 (2000)?

II. Did the Court of Appeals err by indicating that the principles of workers' compensation may operate differently when exclusivity of the statute is asserted by the defendant as a shield to liability?

## LAW/ANALYSIS

### I. *Abbott*

Shakespeare argues that *Abbott* does not apply to this case. We disagree.

In *Abbott*, the plaintiff was employed by a common carrier. The carrier had contracted with the defendant retailer, The Limited, Inc., to deliver goods to the defendant retailer's stores. 338 S.C. at 162, 526 S.E.2d at 514. The plaintiff was injured when he slipped and fell while unloading boxes on the defendant retailer's premises. *Id.* The plaintiff received workers' compensation benefits from his common carrier employer and brought a negligence action against the defendant retailer. *Id.* The defendant retailer moved to dismiss on grounds that plaintiff was its statutory employee, and, therefore, that workers' compensation provided plaintiff's exclusive remedy under S.C.Code Ann. § 42–1–400. *Id.* The trial court granted the motion to dismiss, but this Court reversed, holding that "the mere recipient of goods delivered by a common carrier is not the statutory employer of the common carrier's employee." *Id.* at 163, 526 S.E.2d at 514.

The statutory employment concept is based on South Carolina Code Ann. § 42–1–400. That section provides,

> When any person, in this section and §§ 42–1–420 and 42–1–430 referred to as "owner," undertakes to perform or execute *any work which is a **part of his trade, business or occupation*** and contracts with any other person (in this section and §§ 42–1–420 to 42–1–450 referred to as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this Title which he would have been liable to pay if the workman had been immediately employed by him.

S.C.Code Ann. § 42–1–400 (Supp.2002) (emphasis added). In determining whether an employee is engaged in activity that is "part of [the owner's] trade, business, or occupation" as required under section 42–1–400, this Court has applied three tests. The activity is considered "part of [the owner's] trade, business, or occupation" for purposes of the statute if it (1) is an important part of the owner's business or trade; (2) is a necessary, essential, and integral part of the owner's business; *or* (3) has previously been performed by the owner's employees. *Glass v. Dow Chemical,* 325 S.C. 198, 482 S.E.2d 49 (1997). If the activity at issue meets even *one* of these three criteria, the injured employee qualifies as the statutory employee of "the owner." *Id.*

Applying these tests in *Abbott,* the Court found that "the fact that it was important to [defendant retailer] to *receive* goods does not render the delivery of goods an important part of [defendant retailer's] business." *Abbott,* 338 S.C. at 163, 526 S.E.2d at 514. The Court explained further, " '[t]he mere fact that transportation of goods to one's place of business is essential for the conduct of the business does not mean that the transportation of the goods is a part or process of the business.' " *Id.* (quoting *Caton v. Winslow Bros. & Smith Co.,* 309 Mass. 150, 34 N.E.2d 638, 641 (1941)). In so holding, the Court explicitly overruled two cases to the extent they could be read to hold otherwise: *Neese v. Michelin Tire Corp.,* 324 S.C. 465, 478 S.E.2d 91 (Ct.App.1996) (holding that plaintiff truck driver employed by common carrier who was injured transporting raw materials to and from Michelin pursuant to Michelin's contract with his employer qualified as the statutory employee of Michelin), and *Hairston v. Re: Leasing, Inc.,* 286 S.C. 493, 334 S.E.2d 825 (Ct.App.1985) (finding plaintiff

truck driver qualified as statutory employee of defendant car dealership when he was injured transporting cars to the dealership). *Abbott,* 338 S.C. at 164, 526 S.E.2d at 514, n. 1.

Shakespeare contends *Abbott* is distinguishable from the present case. Shakespeare argues that the delivery to the defendant retailer in *Abbott* was not an essential part of its business because plaintiff was delivering inventory that defendant retailer then had to sell. Conversely, Shakespeare argues delivery of the fiberglass poles in this case was essential to its business because the sale would be complete upon delivery. In Shakespeare's words, "[t]he distinction in this case is that Olmstead was delivering a product to Shakespeare's customer and without that delivery there would be no sale." (Pet. Br. at 5). Shakespeare also emphasizes that *Abbott* involved delivery of goods **to** the defendant while the present case involves delivery **from** the defendant.

The Court of Appeals refused to read *Abbott* so narrowly. The court agreed that *Abbott* involved the *receipt* of goods as opposed to *delivery* of goods, and, as such, noted it was unnecessary for the *Abbott* court to address the delivery of goods from a manufacturer to a customer because that factual issue was not presented in *Abbott.* 348 S.C. at 361, 559 S.E.2d at 339. Further, the Court of Appeals noted that neither the *Neese* nor the *Hairston* case, which this Court explicitly overruled, emphasized or even addressed delivery in this context. *Id.*

In our opinion, the Court of Appeals correctly interpreted this Court's decision in *Abbott.* We read their opinion as holding that *Abbott* is not limited to receipt of goods cases, but applies equally to delivery of goods cases as long as the transportation of goods is not the primary business of the company to whom or from whom goods are being delivered. Shakespeare manufactures fiberglass products and was shipping a finished product to a customer via a common carrier. As this Court noted in *Abbott,* "[t]he fact that it was important to [defendant retailer] to *receive* goods does not render delivery of goods an important part of the [defendant retailer's] business" for statutory employment purposes. 338 S.C. at 163, 526 S.E.2d at 514. Likewise, the fact that it was important to Shakespeare to deliver its finished product to its customer in order to consummate a sale does not render the

delivery of its products an important part of its business for purposes of statutory employment.

This Court has recognized that the construction of the statutory employment statute, and the tests established to interpret that statute, do not eliminate the need for an individualized determination of the facts of each case in which statutory employment is alleged. "Since no easily applied formula can be laid down for determining whether work in a particular case meets these tests, each case must be decided on its own facts." *Dow*, 325 S.C. at 201, 482 S.E.2d at 51 (citing *Ost v. Integrated Prods., Inc.*, 296 S.C. 241, 371 S.E.2d 796 (1988)). *Abbott* does not change the need for this case by case analysis; *Abbott* merely establishes that transportation of goods is important to nearly all businesses, and, that transportation of goods by a common carrier alone, without something more, does not qualify as "part of [the owner's] trade, business, or occupation" under any of the three established tests for statutory employment.

Shakespeare designs and manufactures fiberglass products. It is not in the transportation business; it did not own any delivery trucks and none of its employees participated in the delivery of its products beyond the loading stage. All of the raw materials used to manufacture Shakespeare's products arrive at Shakespeare by common carrier and almost all of its finished products leave the plant by common carrier. Shakespeare's representative testified in his deposition that Shakespeare pays for delivery to its customer only when the order exceeds $3,000. Although delivery by common carrier was certainly important to Shakespeare's operation, it does not follow that such delivery was " 'part or process' " of its manufacturing business. *See Abbott*, 338 S.C. at 164, 526 S.E.2d at 514 (quoting *Caton*, 34 N.E.2d at 641) (finding defendant manufacturer of wool was not statutory employer of driver employed by common carrier to transport wool to defendant's warehouse).

In our opinion, the Court of Appeals employed the correct analysis in finding that Olmstead was not Shakespeare's statutory employee and we affirm their decision. *Abbott* represents a change in this state's jurisprudence on what activity constitutes "part of [the owner's] trade, business or occupation" under section 42–1–400, and likely conflicts with cases

other than the ones we explicitly overruled in footnote 1 of the *Abbott* opinion. As such, we now overrule all prior cases to the extent they are in conflict with our holding in *Abbott* and now in this case.

## II. Exclusivity As A Shield

After the Court of Appeals concluded that Olmstead was not the statutory employee of Shakespeare, it went on to comment that the broad construction in favor of coverage normally employed in workers' compensation cases was not "as pertinent where the statutory employee definition and exclusive remedy provision are used as a shield to prevent recovery under another theory." *Olmstead*, 348 S.C. at 441, 559 S.E.2d at 372. This Court has not previously adopted a different standard of review for cases in which the workers' compensation statute is used as a shield to liability under another theory, and declines to do so now.[2]

### CONCLUSION

For the foregoing reasons, we **AFFIRM AS MODIFIED** the decision of the Court of Appeals and overrule prior cases to the extent they conflict with our holding in this case and in *Abbott.*

MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.

---

2. For instance, this Court made no such statement in *Glass v. Dow Chemical*, in which the defendant asserted statutory employment as a shield just as Shakespeare did in the present action. 325 S.C. 198, 482 S.E.2d 49.